UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| SANG MIN LEE, | ) | CASE NO.  4:06CV2356 |
| | ) | |
| | ) | |
| Petitioner | ) | JUDGE PETER C.  ECONOMUS |
| | ) | |
| -vs- | ) | |
| | ) | |
| MARK HANSEN, et al., | ) | MEMORANDUM OF OPINION |
| | ) | AND  ORDER |
| | ) | |
| Respondents. | ) | |


Pro se petitioner Sang Min Lee filed the above-captioned habeas corpus action against Mark Hansen, District Director for the United States Citizenship and Immigration Services in Cleveland, Ohio pursuant to 28 U.S.C. § 1651.[1]   Incarcerated at the Federal Correctional Institution in Elkton, Ohio (F.C.I. Elkton), Mr. Lee is seeking a judgment from this court compelling the respondent to reopen his application for United States citizenship and issue a certificate of citizenship.

---

[1]Although petitioner's case caption indicates that there is more than one respondent, Mr. Hansen is the only respondent named in his petition.

*Background*

Mr. Lee was born to Jae Duck and Hung Pok Lee on February 2, 1980 in Masan, South Korea. His parents divorced on April 25, 1983 and, some time thereafter, Mrs. Lee immigrated to the United States. On May 21, 1985, petitioner's mother married Alex Temporado, a citizen of the United States. As the wife of a U.S. citizen, Mrs. Temporado became a naturalized citizen of the United States on April 18, 1986.

More than six years after Mrs. Temporado became a naturalized citizen, Mr. Lee immigrated to the United States at the age of twelve. He claims he remained with his mother and was "afforded lawful permanent residence in the U.S. as a child in the custody of his Mother, a naturalized U.S. Citizen." (Pet. at 2.)

At the age of twenty-one, Mr. Lee was sentenced to 87 months in prison on July 10, 2001 for armed bank robbery in the United States District Court for the Eastern District of North Carolina. His projected date of release from that prison term is July 9, 2007.

On October 26, 2004, Mr. Lee petitioned for a certificate of citizenship by filing a Form N-600, based on his assertion of "automatic" derivative citizenship pursuant to 8 U.S.C. §1432(a). A notice, dated June 15, 2005, was sent by the Department of Homeland Security (DHS) to Mr. Lee advising him that a hearing regarding his Certificate of Citizenship, Form N-600 was scheduled for July 12, 2005. He claims his attorney notified the DHS that petitioner would not be able to attend the hearing because of his confinement in prison. Mr. Lee claims that his attorney suggested that he be interviewed by a hearing officer at F.C.I. Elkton or, in the alternative, that he would opt to waive the hearing pursuant to 8 C.F.R. § 341.2.

The DHS denied Mr. Lee's application for citizenship on July 13, 2005 based

2

allegedly on the Department's belief that petitioner abandoned his application by failing to appear at the hearing.  Mr. Lee claims that the DHS letter of denial advised that the decision was not appealable, thus "disrobing this petitioner of any opportunity to exhaust his remedies."  (Pet. at 5.) In response, Mr. Lee filed a petition to reopen his application for citizenship.

*Analysis*

Mr. Lee now claims that his petition to reopen his application for citizenship has been "pending in that  office for a considerable time now with no further action.  Due to the expediency of action that is needed, the petitioner now moves this Honorable Court for issuance of this writ of mandamus to compel the Department of Homeland Security . . . to issue his certificate of citizenship as a result of his entitlement and the law."  (Pet. at 3.)

Claiming a clear and indisputable right to derivative citizenship automatically, Mr. Lee believes that he satisfied all of the statutory criteria for citizenship as set forth in 8 U.S.C. §1432(a).  He asserts that there is "no legal basis for the initial denial by the office to begin with, and the subsequent continuous delay by the agency in declaring him a United States citizen is belied by the record and the law."  (Pet. at 6-7.)  He further notes that, as a U.S. citizen, he "is entitled to various institutional programs that he is currently being deprived of as a result of the lodged detainer, which by the way, is unwarranted."  (Pet. at 5.)

Mr. Lee seeks the assistance of this court to compel the DHS to reopen his N-600 application, and "to further declare him a U.S. citizen accordingly as the law affords him. . . . having satisfied the delineated criteria set forth in 8 U.S.C. §1432(a), ¶¶ 3, 4, & 5." (Pet. at 5.)  In short, he is asserting that he is entitled to a declaration of derivative U.S. citizenship, as a matter of law.

3

*28 U.S.C. § 1651*

The All Writs Act, 28 U.S.C. § 1651(a), empowers the federal courts to "'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.' The exercise of this power 'is in the nature of appellate jurisdiction' where directed to an inferior court." <u>F.T.C. v. Dean Foods Co.</u>, 384 U.S. 597, 603 (1966).  However, it is the Mandamus Act that vests district courts with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.  Considering the fact that Mr. Lee seeks an order from the court compelling an agent of the DHS to act, it is presumed that his mandamus request is pursuant to 28 U.S.C. *§1361*, not 28 U.S.C. *§ 1651*.

Mandamus relief is appropriate "only when the plaintiff's claim is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt." <u>Giddings v. Chandler</u>, 979 F.2d 1104, 1108 (5th Cir.1992); <u>see also</u> <u>Davis v. Fechtel</u>, 150 F.3d 486, 487 (5th Cir.1998).  In the instant case, Mr. Lee must establish: (1) that he has a clear right to have his petition to reopen considered immediately; (2) that respondent has a nondiscretionary duty to rule on the petition; and (3) that he has no other adequate remedy. <u>See</u> <u>Allied Chemical Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 35 (1980) (party seeking mandamus relief must show "clear and indisputable" right and have no other adequate remedy); <u>Dunn-McCampbell Royalty Interest, Inc. v. National Park Service</u>, 112 F.3d 1283, 1288 (5th Cir.1997) (duty must be for specific, ministerial act, devoid of discretion).

As a threshold matter, Mr. Lee does not state when he filed his petition to reopen his application for citizenship, or under what duty the respondent is tasked to respond to his request

4

immediately.  Instead, he asserts an unabridged right to a certificate of citizenship based on 8 U.S.C.

§ 1432(a), which is the statute under which he argues he has satisfied the criteria to be deemed a

United States citizen automatically.  This assertion, however, steps beyond the nature and scope of

his mandamus request.  Regardless of whether Mr. Lee meets what he believes are the statutory

requirements for derivative citizenship, a mandamus action is designed to compel an agent to fulfil

a duty he owes to a petitioner because the petitioner has no other remedy.

        With regard to the denial of Mr. Lee's application for citizenship, the relevant Code

of Federal Regulations provides:

> [T]he applicant shall be furnished with the reasons for denial
> and advised of the right to appeal in accordance with the
> provisions of 8 C.F.R. 103.3(a). An applicant may file an
> appeal on Form I-290B, Notice of Appeal to the
> Administrative Appeals Unit (AAU), with the required fee
> prescribed in § 103.7(b)(1) of this chapter, in accordance with
> the instructions therein and with any supporting
> documentation addressing the reasons for denial. To be
> timely, an appeal must be filed within 30 days of service of
> the decision. After an application for a certificate of
> citizenship has been denied and the time for appeal has
> expired, a second application submitted by the same
> individual shall be rejected and the applicant will be
> instructed to submit a motion for reopening or reconsideration
> in accordance with 8 CFR 103.5. The motion shall be
> accompanied by the rejected application and the fee specified
> in 8 CFR 103.7. A decision shall be issued with notification
> of appeal rights in all certificate of citizenship cases,
> including any case denied due to the applicant's failure to
> prosecute the application.

8 C.F.R. § 320.5 (2007).  It is clear that remedies are available to any applicant whose certificate of

citizenship is denied.  The fact that Mr. Lee was left with the sole option to file a motion for

reopening appears to be a consequence of his failure to timely appeal the denial of his certificate.

Beyond that fact that an applicant shall be notified of the reasons his certificate of citizenship was

denied, Mr. Lee does not state that the DHS has a "nondiscretionary duty" to immediately reopen his application for citizenship. Moreover, this is not a case wherein 'but for' the respondent's failure to act within a reasonable period of time Mr. Lee would otherwise have qualified for citizenship. See Harriott v. Ashcroft, 277 F. Supp. 2d 538 (E.D. Pa. 2003)(under a prior version of statute, court estopped government from denying certificate of citizenship to adopted child who turned 18 while the application for the certificate was pending after unreasonably delayed processing the application in violation of its own guidelines).

To the extent Mr. Lee becomes subject to deportation based on his status as a convicted felon he still has a remedy. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") vested jurisdiction over nationality claims in the Court of Appeals. See 8 U.S.C. § 1252(b)(5); see also Alvarez-Garcia v. United States I.N.S., 234 F.Supp.2d 283, 290 (S.D.N.Y.2002)("criminal aliens are required to bring petitions for review of citizenship and nationality claims in the courts of appeals.") Therefore, if Mr. Lee still asserts that he is a United States national he may do so by challenging a final order of deportation with the Court of Appeals once he in the in custody of the I.N.S.[2]

With regard to the 'detrimental effects of a detainer,' that issue was already addressed in the Memorandum of Opinion dismissing the petition for writ of habeas corpus Mr. Lee filed in this court on March 21, 2006. See Lee v. Hansen, No. 1: 06CV0647, Memo. of Op. at 3-4 (N.D. Ohio, dismissed June 8, 2006)("the law is well established that a prisoner cannot challenge an immigration detainer until he has actually passed into I.N.S. custody.")  Mr. Lee is still serving the

---

[2]As of March 1, 2003, the I.N.S. ceased to exist. Its functions were transferred to the Department of Homeland Security (D.H.S.). The former I.N.S. is now the Bureau of Immigration and Customs Enforcement ("BICE").

prison sentence imposed by the District Court of North Carolina and is, therefore, in the sole custody of the BOP, not the I.N.S..  The detainer only constitutes a notice that the I.N.S. may seek custody of the prisoner in the future; it does not confer custody to the I.N.S.  See Id.

Based on the foregoing, this action is dismissed without prejudice pursuant to 28 U.S.C. § 2243.  The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

S/Peter C. Economus - 1/10/07
PETER C.  ECONOMUS
UNITED STATES DISTRICT JUDGE